# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:20-CV-00334-FDW

| | |
|---|---|
| LISA FUNDERBURK, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **ORDER** |
| ) | |
| v. ) | |
| ) | |
| ANDREW SAUL, ) | |
| ) | |
| **Defendant.** ) | |

THIS MATTER is before the Court on Plaintiff Lisa Funderburk's Motion for Judgment on the Pleadings, (Doc. No. 10), and Defendant Commissioner of Social Security Andrew Saul's ("Commissioner") Motion for Summary Judgment, (Doc. No. 12). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Supplemental Security Income Benefits.

Both motions have been fully briefed and the Court has carefully reviewed both. For the reasons that follow, the Court DENIES Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 10), and GRANTS Defendant's Motion for Summary Judgment. (Doc. No. 12). The Commissioner's decision is accordingly AFFIRMED.

### I. BACKGROUND

Plaintiff filed an application for Supplemental Security Income Benefits under Title XVI on June 07, 2016 with an alleged disability onset date of April 5, 2016. (Tr. 264-65). After her application was denied initially and again upon reconsideration, (Tr. 140, 150), Plaintiff requested an administrative hearing. (Tr. 162). A hearing was held on February 28, 2019. (Tr. 15). On April

1

23, 2019, Administrative Law Judge Valorie Stefanelli ("ALJ") issued an unfavorable decision. (Tr. 26-27). On April 28, 2020, the Appeals Council ("AC") denied Plaintiff's request for review, meaning the ALJ's decision was "the final decision of the Commissioner of Social Security" in Plaintiff's case. (Tr. 1).

The ALJ made her decision after following the five-step evaluation process for disability claims under the Social Security Act ("The Act"). (Tr. 27); see also 20 C.F.R. §416.920(a)(4). At the first step, the ALJ determined Plaintiff had not engaged in "substantial gainful activity" since the application date of her disability. (Tr. 17). At step two, the ALJ determined which of Plaintiff's impairments are severe. Id., 20 C.F.R. §§ 404.1520(c). The ALJ found that Plaintiff had the following severe impairments: right carpal tunnel syndrome, migraines, asthma, obesity, depression, and post-traumatic stress disorder (PTSD). (Tr. 17). At step three, the ALJ determined that none of Plaintiff's severe impairments, nor any combination of the impairments, met or medically equaled a *per se* disabled medical listing under 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (Tr. 19). At step four, the ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC):

> to perform light work as defined in 20 CFR 416.967(b) except no climbing of ladders, ropes, or scaffolds; all other postural would be occasional; frequent, not continuous, handling with one upper extremity; no exposure to extreme temperatures or respiratory irritants such as fumes, gases, or chemicals; can maintain concentration for up to two hours at a time to perform simple, routine tasks with only occasional decision making and occasional changes to the work duties.

(Tr. 20). Finally, at step five, the Vocational Expert ("VE") testified that Plaintiff, with her current restrictions, was incapable of performing past relevant work as a child monitor because the mental and/or physical demands of Plaintiff's past relevant work exceeded her current RFC. (Tr. 25, 68-69). In the alternative, in response to a hypothetical that accounted for Plaintiff's age, education, work experience, and RFC, the VE testified that an individual with similar limitations could perform jobs for which work exists in significant numbers in the national economy. (Tr. 69-70). Thus, the

ALJ concluded Plaintiff was not disabled as defined in The Act. (Tr. 27).

Plaintiff has exhausted all administrative remedies and now appeals. (Doc. No. 1). In Plaintiff's Motion for Judgment on the Pleadings, Plaintiff argues the ALJ's decision should be reversed and remanded because the ALJ erred by failing to properly account for Plaintiff's moderate limitation in the maintenance of her concentration, persistence, and pace while working. (Doc. No. 11, p. 9).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. §405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "It consists of more than a mere scintilla of evidence" but "may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. §404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179-80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect her ability to work].'" Lewis, 858 F.3d at 861-62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the consideration applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636; see also SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8P, 1996 SSR LEXIS 5, 1996 WL 374184, at *1; see generally 20 C.F.R. §§404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's]

> medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [his] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [his] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity to work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862. Proceeding to step four, the burden remains with the claimant to show she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). "The commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

In her Motion for Judgment on the Pleadings, Plaintiff contends the ALJ committed reversible error when she failed to incorporate nonexertional limitations "on the ability to stay on task where the ALJ first finds that [Plaintiff] was moderately impaired in the maintenance of concentration, persistence, or pace." (Doc. No. 11, p. 9). Plaintiff specifically argues the ALJ's analysis and conclusion regarding concentration, persistence, and pace fell short of the standard required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). For its part, the Government argues the ALJ properly accounted for Plaintiff's limitation in concentration, persistence, and pace, particularly considering the more recent decision, Shinaberry v. Saul, 952 F.3d 113 (4th Cir. 2020).

5

In Mascio, the Fourth Circuit held that a hypothetical tendered to a VE was legally insufficient where the ALJ failed to explain why the plaintiff's moderate mental limitation in concentration, persistence, and pace did not translate into the RFC. 780 F.3d at 638. The court reasoned that an ALJ cannot sufficiently account for a claimant's limitation in concentration, persistence, and pace by simply limiting the hypothetical to simple or unskilled work. Id. at 638 (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). In other words, "Mascio held that the ability to perform simple work is not the same as having the ability to *stay on task* during a workday, which is the limitation that would account for a claimant's impairment in concentration, persistence or pace." Minor v. Berryhill, No. 9:17-1087-TMC-BM, 2018 WL 1305181, at *5 (D.S.C. Feb. 20, 2018) (emphasis in original). The Mascio court ultimately remanded because the ALJ provided no explanation at all regarding whether the claimant's limitation affected her RFC. Mascio, 780 F.3d at 638.

More recently, in Shinaberry, the Fourth Circuit held that a limitation to "simple, routine, repetitive tasks" sufficiently accounted for a moderate limitation in concentration, persistence, and pace where the ALJ "issued a comprehensive decision denying [the plaintiff's] claim." Shinaberry, 952 F.3d at 119. The court explained that Mascio did not enact a *per se* rule, but instead allowed an ALJ to explain why a restriction greater than simple, routine, repetitive tasks was not warranted. Id. at 121. If an ALJ adequately explains why the objective medical evidence supports a limitation to "simple, routine, repetitive tasks," the ALJ adequately accounts for a claimant's limitations in concentration, persistence, and pace. See id. at 121-22. ("In sum . . . the ALJ . . . addressed the [p]laintiff's mental limitations] and explained why the psychological evidence and [the plaintiff's] statements support [only] a mental limitation to [simple, routine, repetitive tasks].") Id. at 122.

Here, the ALJ limited Plaintiff to an RFC of maintaining "concentration for up to two hours at a time to perform simple, routine tasks with only occasional decision making and occasional

changes to the work duties." (Tr. 20). Although Plaintiff takes issue with different aspects of the ALJ's decision, Plaintiff's argument boils down to an argument that the ALJ's decision is not supported by substantial evidence.

Substantial evidence supports the ALJ's RFC limitation, notwithstanding Plaintiff's arguments to the contrary. First, the ALJ explained that Plaintiff has no limitation in "interacting with others," describing how Plaintiff could "shop and get along with family members who live in her home." (Tr. 19). The ALJ expanded on this, saying Plaintiff can also perform "simple maintenance, prepare meals, pay bills," and drive. Id. The ALJ here adequately considered Plaintiff's daily activities when evaluating her RFC. See Hampton v. Saul, No. 1:19-CV-00186-RJC, 2020 WL 3799769, at *3 (affirming an ALJ's decision when the ALJ concluded the claimant could complete "simple tasks for two-hour periods" in part due to the claimant's daily activities). Plaintiff argues the ALJ failed to properly account for the extent to which Plaintiff could maintain her daily living activities. (Doc. No. 11, p. 12). However, Plaintiff fails to point to any evidence in the record the ALJ failed to consider. See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 100 (4th Cir. 2020) (remanding the ALJ's decision because he selectively cited evidence concerning plaintiff's ability to perform tasks and failed to address plaintiff's testimony concerning specific difficulties plaintiff has in completing certain tasks). Unlike the plaintiff in Arakas who pointed to specific testimony the ALJ did not consider in formulating the RFC, the Plaintiff here fails to direct the Court to any evidence in the record the ALJ failed to consider in formulating Plaintiff's RFC. Arakas, 983 F.3d at 100 (remanding the ALJ's determination that plaintiff was not disabled due to the ALJ improperly "cherry-pick[ing] . . . facts from the record.").

Second, the ALJ explained that, although Plaintiff's impairments could "reasonably be expected to cause the alleged symptoms," Plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical

7

evidence and other evidence in the record." (Tr. 21). For example, the ALJ, in assessing the limiting effects of the Plaintiff's physical impairments, gave less weight to "the State agency medical consultants' assessments that [Plaintiff] could do medium work with no concentrated exposure to respiratory irritants." (Tr. 24). Instead, the ALJ ruled that the evidence "as a whole . . . supports *greater* limitations." Id. (emphasis added). The ALJ also outlined how the objective medical record showed "no change or worsening since" Plaintiff's "prior decision of March 2016" where Plaintiff alleged "the same impairments" and was denied benefits. (Tr. 21).

Third, the ALJ found that there was no "significant worsening since the prior decision in March 2016" in Plaintiff's mental impairments. (Tr. 22). The ALJ elaborated, saying Plaintiff reported "overall control in depression, anxiety, and sleep[s] on medications without side effects." Id. The ALJ highlighted how Plaintiff reported increased symptoms after her "prior unfavorable decision," but that her "affect was reactive and appropriate," and that Plaintiff was "fully oriented." (Tr. 22-23). The ALJ also considered many of the symptoms that Plaintiff "endorsed," but ultimately ruled she was showing improvement, as her mental status examination in February 2017 "was unremarkable other than anxious and depressed mood." (Tr. 23).

Unlike the ALJ in Mascio who did not "explain how he decided which of [the plaintiff's] statements to believe and which to discredit," the ALJ here adequately assigned weight to different examiners opinions and compared it to the Plaintiff's own evaluation of her symptoms and made a decision supported by substantial evidence thereafter in formulating the RFC. Mascio, 780 F.3d at 640; (Tr. 22-24). The ALJ assigned "great weight to the consultative psychological examiner's opinion in 2014 that [Plaintiff] can ascertain the dangerousness of everyday situations and knows the necessary action to avoid physical danger." (Tr. 24). The ALJ elaborated, saying Plaintiff could "retain and follow directions" and could "sustain [her] attention to perform simple, repetitive tasks." Id. Moreover, the ALJ gave "significant weight to the State agency psychological consultants'

finding that [Plaintiff] has moderate limitations in concentration, persistence, or maintaining pace and can follow simple and short instructions, maintain attention and concentration for extended periods, and interact appropriately with coworkers and supervisors." Id. Ultimately the ALJ here adequately "explained why the psychological evidence and [Plaintiff's] statements support a mental limitation to "simple, routine" tasks with "only occasional decision making and occasional changes to [Plaintiff's] work duties." Shinaberry, 952 F.3d at 122; (Tr. 20).

In sum, the ALJ did not err in accounting for Plaintiff's limitations in concentration, persistence, and pace. The ALJ limited Plaintiff to an RFC of maintaining "concentration for up to two hours at a time to perform simple, routine tasks with only occasional decision making and occasional changes to the work duties," which accounts for her limitations in concentration, persistence, and pace, which is supported by substantial evidence. (Tr. 20). The Court accordingly DENIES Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 10), GRANTS the Commissioner's Motion for Summary Judgment (Doc. No. 12), and AFFIRMS the Commissioner's decision.

## IV. CONCLUSION

NOW THEREFORE IT IS ORDERED:

1. Plaintiff's "Motion for Judgment on the Pleadings" (Doc. No. 10) is DENIED; Defendant's "Motion for Summary Judgment" (Doc. No. 12) is GRANTED; and the Commissioner's decision is AFFIRMED.

2. The Clerk is directed to send copies of this Order to counsel for the parties.

Signed: April 30, 2021

IT IS SO ORDERED.

Frank D. Whitney
United States District Judge